IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNTRUST MORTGAGE, INC.,

    Plaintiff,

v.                                                   Civil Action No. 3:12CV162

FIRST RESIDENTIAL MORTGAGE
SERVICES CORPORATION,

    Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on Defendant First Residential Mortgage Services Corporation's ("First Residential") Motion to Dismiss Complaint. (Docket No. 11.) This motion has been fully briefed and is ripe for disposition. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process. For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that First Residential's Motion to Dismiss Complaint be DENIED.

### I. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## II. Factual and Procedural Background

### A. Summary of Allegations in the Complaint

On June 9, 2005, Plaintiff SunTrust Mortgage, Inc. ("SunTrust") and First Residential entered into a Correspondent Loan Purchase Agreement, in which First Residential agreed to sell, and SunTrust agreed to purchase residential loans pursuant to the terms of the Agreement. (Compl. ¶ 7; *see* Compl. Ex. 1 (hereinafter "Agreement").) First Residential warranted that each loan would be a valid and binding obligation of the borrower, that each loan complied with the requirements of the applicable loan program, and that each loan would constitute an acceptable investment. (Compl. ¶ 9; Agreement ¶ 17.)

Upon the occurrence of certain specified events, SunTrust could demand that First Residential repurchase the loan in question, and First Residential agreed to repurchase the loan in question within ten calendar days after a demand from SunTrust. (Compl. ¶ 10; Agreement ¶ 20.) The specified events included the following: (1) breach of warranty or representation; and, (2) the discovery that the loan application or package contained incomplete, inaccurate, false, or misleading information in any material respect, regardless of whether First Residential had or should have had knowledge of the same. (Compl. ¶ 10; Agreement ¶¶ 20.1.1, 20.1.3.)

First Residential also agreed to indemnify SunTrust against "any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses" arising from the breach of any representation, warranty, or obligation contained in the Agreement, or for any materially inaccurate, incomplete, false, or misleading information provided to SunTrust by or through First Residential. (Agreement ¶ 22; Compl. ¶ 8.)

Pursuant to the terms of the Agreement, SunTrust purchased from First Residential the following loans at issue in this case: (1) the Hernandez 3378 loan acquired by SunTrust on May

3

1, 2007 (Compl. ¶ 12); (2) the Morejon 2665 loan acquired by SunTrust on July 10, 2007 (Compl. ¶ 22); (3) the Herrera 1547 loan acquired by SunTrust on January 10, 2008 (Compl. ¶ 30); and, (4) the Badia 2716 loan acquired by SunTrust on January 1, 2008 (Compl. ¶ 36). SunTrust alleges that the applications for these four loans contained inaccurate information either in the appraisal or about the borrower's assets, income, employment, or debts regarding the borrower's assets, income, employment, debts or inaccurate appraisals, resulting in losses totaling $1,177,898.20. (Compl. ¶¶ 14, 17, 24, 32, 38.)

### B. Procedural History

On March 1, 2012, SunTrust filed a Complaint against First Residential, asserting three claims. Count I asserts a breach of the Agreement's indemnification provision, alleging that First Residential has failed to indemnify SunTrust against losses incurred as a result of First Residential's breach of warranties. (Compl. ¶¶ 43-47.) In Count II, SunTrust alleges that First Residential breached various express warranties included in the parties' Agreement, thereby requiring First Residential to either indemnify SunTrust or repurchase the subject loans. (Compl. ¶¶ 48-53.) Finally, in Count III, SunTrust seeks to compel specific performance of First Residential's loan repurchase obligations under in the Agreement. (Compl. ¶¶ 54-61.)

In its Motion to Dismiss Complaint, First Residential offers six arguments as to why SunTrust's Complaint should be wholly or partially dismissed. First Residential first contends that the Agreement between the two parties is unenforceable as a matter of law for lack of mutuality. First Residential's second and third arguments move to dismiss SunTrust's Complaint to the extent it relies on defects in the Badia 2716 and Herrera 1547 loans. Next, First Residential asserts that Count II should be dismissed as duplicative of Count I. Fifth, First Residential argues that the Court should dismiss SunTrust's breach of contract claim for

4

improper "shotgun pleading." (Def.'s Mem. Supp. Mot. Dismiss Compl. ("Def.'s Mem. Supp.") 3.) Finally, First Residential objects to SunTrust's requested relief of specific performance, which it claims is unavailable in light of an allegedly adequate monetary relief. As discussed below, none of First Residential's arguments persuade the Court, and the Court denies the motion to dismiss SunTrust's Complaint in whole or in part.

### III. Analysis

#### A. Mutuality

Under Virginia law, mutuality of obligation is essential to a valid contract. *Crews v. Sullivan*, 113 S.E. 865, 868 (Va. 1922). "[W]here the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound, or neither is bound." *Am. Agric. Chem. Co. v. Kennedy & Crawford*, 48 S.E. 868, 870 (Va. 1904). Parties can satisfy the mutuality requirement with promises on each side, even though these promises "may relate to different terms of the contract and may be conditioned upon performance by the other party." *C.G. Blake Co. v. W.R. Smith & Son, Ltd.*, 133 S.E. 685, 688 (Va. 1926).

Courts determine whether the mutuality requirement exists not at the time of the creation of the contract, but at the time the contract is sought to be enforced. *Asberry v. Mitchell*, 93 S.E. 638, 639 (Va. 1917). A contract that lacks mutuality at its creation can nonetheless become enforceable through the parties' actions that establish their intent to be bound by the contract. *Schwam v. XO Commc'ns., Inc.*, No. 05-1060, 2006 WL 6884392, at *3 (4th Cir. Mar. 24, 2006) (per curiam); *see also Cauvel v. Schwan's Home Serv., Inc.*, No. 6:10-cv-12, 2011 WL 573378, at *2, *7-8 (W.D. Va. Feb. 10, 2011) (finding a contract enforceable based upon the employer's

5

performance despite contractual language allowing for the employer to "terminate, change, amend, administer and rescind" the contract).

Here, First Residential argues that the Agreement lacks mutuality, rendering it unenforceable. First Residential notes that ¶ 3.4 of the Agreement incorporates the provisions of SunTrust's STM Correspondent Seller Guide and states that this manual "shall prevail over and supersede" any conflicting provision contained in the Agreement. (Agreement ¶ 3.4.) First Residential argues that SunTrust can unilaterally alter the terms of the Agreement because ¶ 3.4 also gives SunTrust the right to "amend or modify" the manual "in its sole discretion." (*Id.*) First Residential argues that SunTrust's ability to modify the Agreement equates to a lack of mutuality.

This Court has already addressed and rejected this argument in relation to similar loan purchasing agreements four times. *SunTrust Mortg., Inc. v. Old Second Nat'l Bank*, No. 3:12cv99, 2012 WL 1656667 (E.D. Va. May 10, 2012) (Gibney, J.); *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, No. 3:12cv80, 2012 WL 1166326 (E.D. Va. Apr. 6, 2012) (Gibney, J.); *SunTrust Mortg., Inc. v. Sec. First Bank*, No. 3:11cv704, 2012 WL 777933 (E.D. Va. Mar. 7, 2012) (Spencer, J.); *SunTrust Mortg., Inc. v. Patriot Bank*, No. 3:11cv695 (E.D. Va. Feb. 16, 2012) (Payne, J.). Having considered First Residential's arguments as to a lack of mutuality and having separately reviewed the cases cited by First Residential, the Court finds no reason to disagree with the previous decisions from this Court.

Considering the provisions of ¶ 3.4, the question of whether mutuality existed at the time of contract formation presents "a close call." *Sec. First Bank*, 2012 WL 777933, at * 6. The Court, however, need not decide that question because the parties' post-formation performance renders this contract enforceable. The parties entered into the Agreement in June 2005, and for

the past seven years, SunTrust has purchased mortgage loans from First Residential pursuant to the terms of the Agreement. (Compl. ¶¶ 1, 7; Agreement 1.) "This lengthy transactional history between" the two parties "is evidence of consistent performance and compliance with the Agreement which removes the illusory nature of [SunTrust's] promise, rendering the Agreement enforceable." *Sec. First Bank*, 2012 WL 777933, at *7 (internal quotation remarks omitted; alteration in original). Based on the parties' post-formation performance, the Court declines to find the contract unenforceable for lack of mutuality.

### B. The Badia 2716 Loan

Next, First Residential moves to dismiss SunTrust's claims to the extent they rely on the Badia loan. SunTrust alleges that the Badia loan application "contained inaccurate, false or misleading information regarding one or more additional liabilities in the borrower's name." (Compl. ¶ 38.) Specifically, "[t]he borrower was liable for debts in an amount substantially more than stated on the borrower's loan application." (Compl. ¶ 39.)

In its Motion to Dismiss Complaint, First Residential argues that "the loan program under which this loan was sold required that information about the borrower's liabilities be confirmed by the borrower's credit report—generated by an independent third-party credit reporting agency—and required SunTrust's own [Custom Desktop Underwriter] approve the loan based on that third-party information." (Def.'s Mem. Supp. 13.) First Residential asserts that it had no independent duty to verify the credit report under the applicable loan program. (Def.'s Reply Br. 11.) Because the loan program's requirements trump any conflicting provisions of the Agreement, First Residential argues that it cannot be held liable for the inaccuracies in the Badia credit report.

In contravention to the well-established standard of review governing motions to dismiss, First Residential's argument regarding the Badia loan improperly injects new facts not included in SunTrust's Complaint. The Court cannot consider new factual allegations about the requirements of the specific loan program applicable to the Badia loan at the motion to dismiss stage.

First Residential also urges the Court to consider an attached exhibit entitled "SunTrust Custom Underwriting Findings," allegedly relating to the Badia loan. (Def.'s Reply Br. Ex. 1.) "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (*citing Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)). Here, SunTrust's Complaint does not reference or incorporate this specific document, and the Court declines to consider it. Even were the Court to consider it, First Residential has failed to sufficiently explain the upshot of the attached document.

Turning to the standards SunTrust must meet, SunTrust alleges in its Complaint that First Residential had a duty to indemnify SunTrust for all claims relating to "any materially inaccurate, incomplete, false or misleading information provided by or through First Residential to SunTrust." (Compl. ¶ 8; *see* Agreement ¶ 22.) SunTrust further alleges it had the right to require First Residential to repurchase any loans if "[a]ny information submitted to SunTrust by First Residential proves incomplete, inaccurate, false, or misleading in any material respect at the time the statement was made, regardless of whether First Residential had, or should have had,

any knowledge at the time the information was submitted." (Compl. ¶ 10(c); *see* Agreement ¶ 20.1.3.) SunTrust alleges that it purchased the Badia loan from First Residential pursuant to the terms of the Agreement, that the Badia loan application contained inaccurate, false, or misleading information regarding the borrower's debts, and that it would not have purchased the loan from First Residential had it known about the true amount of the borrower's debts. (Compl. ¶¶ 36-41.) Taking SunTrust's allegations as true and viewing them in SunTrust's favor, SunTrust has stated claims for relief based on the Badia loan.

### C. The Herrera 1547 Loan

First Residential also moves to dismiss SunTrust's claims to the extent they rely on the Herrera loan. SunTrust alleges that the Herrera loan application contained an inaccurate appraisal overstating the actual value of the property. (Compl. ¶¶ 30-35.) First Residential argues that appraisals constitute "nothing more than a third-party professional's opinion as to value" and thus cannot constitute "a fact that can be certified by another entity . . . as being 'true' or 'correct' through any representation or warranty." (Def.'s Mem. Supp. 14.) Thus, First Residential contends it cannot be held liable under the Agreement for any breach.

However, under the Agreement, First Residential agreed to repurchase any loan if:

> Any information submitted by [First Residential] or any statement, report or document furnished by [First Residential] to [SunTrust] was incomplete, inaccurate, false, or misleading in any material respect when made or delivered, regardless of whether [First Residential] had or should have had knowledge of the same at the time. This includes, without limitation, any information in any loan application submitted by any Borrower; *any appraisal or evaluation report*; any credit report; any title search or title insurance policy; and any condominium or PUD warranties made by [First Residential] to [SunTrust].

(Agreement ¶ 20.1.3; *see* Compl. ¶ 10.) First Residential further agreed to indemnify SunTrust for any claims based on "any materially inaccurate, incomplete, false or misleading information provided by or through First Residential to SunTrust." (Compl. ¶ 8; *see* Agreement ¶ 20.) Thus,

9

under the terms of the Agreement, First Residential agreed to bear the risk of any materially inaccurate, incomplete, or misleading information, even when an appraisal contained that information and regardless of whether it contained fact or opinion statements.[1]

Here, SunTrust alleges that the Herrera loan application contained "significant errors and deficiencies in the origination appraisal" (Compl. ¶ 32), that the actual value of the property "was far less than the value stated in the origination appraisal" (Compl. ¶ 33), and that it would not have purchased the loan had it known of the inaccuracies contained in the original appraisal (Compl. ¶ 35). Taking the well-pleaded allegations as true and viewing them in the light most favorable to SunTrust, SunTrust has stated claims for relief based on the Herrera loan.

### D. SunTrust's Breach of Express Warranty Claim

First Residential next argues that SunTrust's claim for breach of express warranty in Count II should be dismissed in light of its allegedly duplicative claim for breach of contract indemnification in Count I. The Court finds First Residential's argument unavailing in light of the alternative pleading allowances under Federal Rule of Civil Procedure 8(d).[2] Although First Residential improperly characterizes these two counts as duplicative, Count I alleges a breach under ¶ 22 of the Agreement based on First Residential's failure to indemnify SunTrust. (Compl. ¶¶ 43-47.) Count II, on the other hand, alleges a breach of express warranties contained in ¶ 17.3 of the Agreement, invoking First Residential's duty to indemnify SunTrust or repurchase the loans at issue. (Compl. ¶¶ 48-53.) Although the Court will not allow duplicative

---

[1] While Virginia courts have held that statements of opinion cannot support a claim for fraud, *Sales v. Kecoughtan Hous. Co.*, 690 S.E.2d 91, 94 (Va. 2010), none of the cases cited by First Residential involved a contract wherein one party agreed to bear responsibility for any inaccurate appraisals. Therefore, the cases cited by First Residential do not persuade the Court otherwise.

[2] "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2).

recovery, SunTrust "has the right to plead alternative theories of recovery based on entirely separate provisions of the Agreement." *Old Second Nat'l Bank*, 2012 WL 1656667, at *2.³ At this juncture, the Court declines to dismiss Count II as duplicative of Count I.

E. <u>Shotgun Pleading</u>

First Residential next argues that SunTrust's Complaint violates Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). First Residential contends that SunTrust instead improperly engaged in "shotgun pleading" by failing "to separate its claims relating to four separate loans into separate counts." (Def.'s Mem. Supp. 17.) First Residential seeks dismissal of SunTrust's breach of contract claim or an order requiring SunTrust to replead its claims for breach of contract.

"Shotgun pleading" occurs when a complaint "'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading,'" *JPMorgan Chase Bank, N.A. v. Hayhurst Mortg., Inc.*, No. 10-21501-CIV, 2010 WL 2949573, at *2 (S.D. Fla. July 26, 2010) (quoting *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008)), or if "'it is virtually impossible to know which allegations of fact are intended to support which claims(s) for relief.'" *Id.* (quoting *Anderson v. Dist. Bd. Of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Indeed, Federal Rule of Civil Procedure 10(b) states that "*[i]f*

---

³ The case citations provided by First Residential do not persuade otherwise. In *Waterfront Marine Construction, Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B, & C*, the Court determined that a breach of warranty claim was barred by the doctrine of res judicata and a previously litigated breach of contract claim. 468 S.E.2d 894, 904 (Va. 1996). In *Atlas Partners II, Ltd. Partnership v. Brumberg, Mackey & Wall, PLC*, the Court dismissed claims that were duplicative under Virginia Supreme Court precedent. No. 4:05CV1, 2006 WL 42332, at *7 (W.D. Va. Jan. 6, 2006). Neither decision involved alternative pleading under two separate provisions of a contract.

*doing so would promote clarity*, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b) (emphasis added).

The Court cannot find on this record that an instance of "shotgun pleading" stands here.[4] While First Residential cites a case from the Southern District of Florida that labels a complaint structurally similar to SunTrust's as a form of shotgun pleading, that decision does not bind the Court. *See JPMorgan Chase Bank, N.A.*, 2010 WL 2949573, at *2-3. Moreover, unlike Florida, this Court has previously found that a structurally similar complaint did not constitute shotgun pleading. *Old Second Nat'l Bank*, 2012 WL 1656667, at *3.[5] Here, SunTrust's Complaint clearly presents the facts and allegations as related to the four individual loans and then provides a short and plain statement of SunTrust's entitlement to relief. Thus, the Court will not dismiss SunTrust's Complaint as violative of Rule 8(a)(2), nor will the Court require SunTrust to amend its Complaint.

### F. SunTrust's Request for Specific Performance

Finally, First Residential argues that the Court must dismiss SunTrust's claim for specific performance under Count III. First Residential notes that, under Virginia law, courts may order specific performance only when a monetary award would be inadequate to redress a plaintiff's injuries and no adequate remedy at law exists. (Def.'s Mem. Supp. 18 (*citing Robins v.*

---

[4] First Residential does not make any argument that it finds SunTrust's complaint so difficult to comprehend or otherwise impossible to decipher that it cannot file a responsive pleading.

[5] Although First Residential cites cases from this Court that label a complaint as a form of shotgun pleading, these cases involved *pro se* plaintiffs who filed voluminous and convoluted complaints containing multiple claims against multiple defendants. *See Jackson v. Olsen*, No. 3:09cv43, 2010 WL 724023, at *1 (E.D. Va. March 1, 2010) (involving a complaint that "spanned over 50 pages, named 30 individuals as defendants, and contained 25 separate 'CAUSES OF ACTION'"); *Sewraz v. Morchower*, No. 3:08cv100, 2009 WL 211578, at *1 (E.D. Va. Jan. 28, 2009) (involving a complaint that "contain[ed] 157 separately numbered paragraphs of excessively detailed and often unnecessary factual background").

*Southland Corp.*, No. N-7119-1, 1990 WL 751050, at * 1 (Va. Cir. Ct. Jan. 25, 1990); *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1089 (E.D. Va. 2011)). Because SunTrust's Complaint seeks money damages and fails to assert the inadequacy of monetary relief, First Residential urges the Court to dismiss SunTrust's claim for specific performance.

In Count III, SunTrust alleges that, under ¶ 20 of the Agreement, First Residential agreed to repurchase any loans from SunTrust if First Residential breached a warranty or representation. (Compl. ¶¶ 10, 57-59; Agreement ¶ 20.) SunTrust alleges that First Residential breached the warranties and representations made under the Agreement, that SunTrust has made repurchase demands, and that First Residential has failed to repurchase the loans at issue. (Compl. ¶¶ 57-59.) SunTrust's Complaint seeks specific performance in the form of a Court order requiring First Residential to repurchase the four loans as provided under the Agreement. (Compl. at 11.)

Here, the parties negotiated a contract that provided for specific remedies. "Specific performance is particularly appropriate when a contract expressly calls for specific performance to remedy a breach." *Old Second Nat'l Bank*, 2012 WL 1656667, at *7 (*citing Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1090, 1102 (E.D. Va. 2011)). Although SunTrust would not be entitled to duplicative recovery, it "may well be entitled to relief on *both* its indemnification-of-losses claim and its related failure-to-repurchase claim." *SunTrust Mortg., Inc. v. Sharpe Mortg. Lending Servs. of Ga., Inc.*, No. 3:11cv576, 2011 WL 6178221, at *5 (E.D. Va. Dec. 12, 2011). Further, at this stage of the litigation, it would be premature to determine whether SunTrust has an adequate remedy at law. The Court thus declines to dismiss Count III at this time.

## IV. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that First Residential's Motion to Dismiss Complaint (Docket No. 11) be DENIED.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation may preclude further review or appeal from such order. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to counsel of record and to the Honorable Robert E. Payne.

/s/ 
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9-11-12